The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention. As the court is now sitting. God save the United States and this honorable court. Good morning everybody. We're here today for a series of hearings. We're going to begin with case number one. Appeal 20-2842 Michael White v. Illinois State Police and we'll begin with oral argument from Mr. Bedell. Morning. May it please the court, counsel. My name is Greg Bedell and I represent Michael White and the Illinois State Rifle Association. This matter is before the court for review of the district court's dismissal of the plaintiff's complaint. Mr. White's claims were dismissed pursuant to the defendant's motion pursuant to Rule 12b-6. The district court dismissed the association's claim sua sponte finding it lacked standing. Mr. White's claims arise under the second and fourteenth amendments to the fourteenth constitution and are based upon being twice denied a license to carry a concealed firearm under the Illinois Firearm Concealed Carry Licensing Act. Mr. Bedell, before we go too far down the road, I just want to clarify up front please. Are you challenging the district court's dismissal of your facial challenge to the law or just as applied? It seemed to me from your briefs that you were only challenging the as applied ruling. As relates to Mr. White, that is correct. The association, however, will be making, would like to make, will be requesting on remand leave to file an amended complaint. The association would then be seeking to make facial challenges on several aspects of the act. Okay, thank you. I'm sorry, if I could, one more kind of procedural question before we go on. The Supreme Court recently granted certiorari in the Bruin case and it looks like they might take up the question of the applicable standard in second amended challenges that don't involve something inside the home. Is there any reason, and I'll ask the state the same question, is there any reason this Supreme Court issues that ruling before we address this case? I'm not familiar with that case. I'm familiar with the New York State Rifle and Pistol Association. That's the one, that's the one I'm talking about. As the cases before the court know, Your Honor, there is the potential, if we're successful here, that on remand additional claims may be made relating to the board itself and its function. But as the appeal is before the court now, we are not challenging the, which would be a part of section 20, the board's function in reviewing an application for whether or not an applicant is dangerous or poses a threat to public safety. And there's nothing about the applicable standard that might apply to second amendment challenges, putting aside the substantive issue. There's nothing about the standard that you think we should wait for. As I understand the question presented, which the Supreme Court actually itself framed in its granting of certiorari, the standard wasn't part of it. It was merely to, excuse me, it was to decide whether or not the, well, I've got the question here, whether the second amendment allows the government to prohibit ordinary law-abiding citizens from carrying handguns outside the home for self-defense. I have not read all of the briefs, but as my understanding is, it is just restricted to essentially the shall issue nature of New York's licensing scheme. Okay. Thank you. In this case, Mr. White pled plausible claims that should be allowed to proceed. He pled that he was wrongfully denied a license to carry a concealed firearm. And that denial violated his second amendment right to bear arms and his 14th amendment right to due process of law. Just a few pertinent facts, I think most important of which is to understand that Mr. White admittedly as a younger man got into trouble. However, around 2001, when he was about 21 or 22 years old, he started to turn his life around. He got a GED, a woman that he'd met, he married, he subsequently had two children. And since 2001, he's been gainfully employed, including being a manager at a Midas muffler shop. In 2014, he applied for a concealed carry license, which was denied. He applied again in 2017, and it was denied again. Both applications were denied by the board, the review board, after law enforcement posed objections to his application. And in making the objections, the law enforcement agencies, the Cook County Sheriff's Department, and actually with the second, excuse me, with the second application was just the Chicago Police Department, recited a number of arrests and misdemeanor convictions that dated back up to 20 years prior to his application. And what we believe to be most devastating to his application was the assertion that he was a member of the Latin soul street gang. Now, in connection with the challenge to the board's finding that he was a danger to himself and a threat to public safety on his second application, Mr. White actually caused a Freedom of Information Act to be submitted to both the Sheriff's Department and the Chicago Police Department, asking for all information relating to and substantiating the allegation, the claim that he was a member of the Latin souls. All he got back was another copy of the computer printout indicating that he was in the gang's This is alleged in our complaint that they were not able to provide any substantiation in relation to this. And we believe that was an exceptionally prejudicial allegation, particularly since in the objection, the police department highlighted this, that gangs are a danger to the city and that danger needs to be addressed. And nobody, nobody challenges that proposition. However, the gang database, as I will discuss in a second, is a completely different proposition. Mr. Bedell, which, um, excuse me, can I interrupt you on that point? Yes. If you go back to the litigation that transpired in Illinois, that made its way to the Illinois Court of Appeals from, I think it was the denial of 2014 application. Yes. My question is, uh, what efforts do you recall Mr. White making in that litigation to challenge, you know, the gate, the, uh, the gang designation in the CPD database? Uh, he, it was in connection. Oh, that's, that's a good question. I do not recall when the FOIA request was made, but it was done in connection with his first or his second application. I just, I don't recall. Right. So here's, here's what I'm getting at. I, I think the, the concern as you articulate it is a quite fair one. And you're, you're not the only one, or Mr. White is not the only one to express concerns about the accuracy, integrity, quality, et cetera, of the database. In fact, the appendix contains that OIG report. Right. The reason I'm asking the question is, it seems to me from, that Mr. White would have been concerned about this at the prior, at the time of the prior application as he is now. And wouldn't he have had an opportunity to have injected the concerns about all of that into the prior litigation? I, I totally understand that it's relevant as to the denial of the 17 application. Just trying to understand as a matter of fact, what opportunity he had to put this in the prior case. Your Honor, I, I simply don't recall whether or not that, that FOIA request was done in connection with the first, with the first application. He began that challenge pro se, and it was at a time when the review board had actually not brought into due process compliance the rules for review. I was involved at that time, but I just don't recall if it was at that time that he submitted the FOIA request. Mr. Bedell, on this issue of the first application and the second application, can you, other than time, indicate any material operative facts that changed with Mr. White's situation between the first application and the second application? The fact that he had no other altercations or run-ins with law enforcement. The implication that this is a dangerous man, and that was the finding of the board twice. And we believe the fact that during that interim, there was no further issue indicating that he was not law-abiding or, or suggesting as the board found that he was dangerous. That just didn't occur. And we feel that is extremely relevant to the consideration of the second application. And we believe, unfortunately, that looking at the gang designation, the review board simply out of hand dismissed it. It's something that we also believe will be permanent. If it's time and law-abiding conduct that you're pointing to, how long would be enough? Your Honor, the guide that we suggested and the guide that we think would be appropriate would be taken from the Concealed Carry Licensing Act itself, which is a seven-year look back for arrests and a five-year look back for convictions for, for violent offenses, both felonies and misdemeanors. So the, the additional three years added significant time to the period during which Mr. White had shown himself to be a law-abiding citizen. Mr. Bedell, if you're going into that level of detail as to what the board is looking at in making this determination, is that a constitutional issue or does that really become an administrative review issue of what the board is doing? Well, we believe that it's a constitutional issue in that in looking at what we consider to be irrelevant and unreliable evidence, the, the fact that the, the, the board is allowed to look at it, and that was a, that was a finding in Perez that the, the board can look at the entire criminal record of an applicant, leads to the consideration of irrelevant and unreliable evidence, and that in and of itself is a burden on the Second Amendment right, which the, the state should be called to answer. Why is that not? Why is it substantially tied to the government objective or we would believe narrowly tailored to a compelling state interest? Now, we, we've not challenging, of course, that the, the, the state has a compelling state interest here. Uh, we're strict scrutiny to be, to be applied. Um, but I mean . . . Mr. Bedell, can I . . . Yes. Um, can I ask, in keeping with the dialogue we're having right now, the answer that you gave to Judge St. Eve, that you want the, that you propose, or I'm sorry to Judge Brennan, that you propose that the dangerousness standard be tied to the seven and five-year look-back periods respectively. Is that to say, in your view, that the, the statute and what is it, Section 20G, the dangerousness aspect of that is unconstitutional in all applications? Not at all. Not at all. We, we do not take issue, because we'd then be challenging 18 U.S.C. 922, where you have categorical, uh, prohibitions for convicted felons, for example. Um, it's, it's clear from Heller that, uh, people that are dangerous can be excluded, and this court in Cantor most recently addressed that. So all you're saying is that the specific content of what constitutes a danger to oneself, et cetera, should, should, um, take itself from the statute. You, you should look for the definitional content from the statutory scheme itself. And the statutory scheme provides those two look-back periods. Yes, Your Honor. And, and there's two precedents that I would, uh, bring to the court's attention that support that. The first is this court's decision in Barron, where the court said that the state has an interest in looking at an applicant's conduct at or near the time the applicant intends to go into public with a firearm. And the second is Cuck. Um, um, Cuck v. Danaher from the District of Connecticut, uh, from the District of Connecticut. There the court applied, uh, to an, a, a, a vagueness challenge, the, the custom, the interpretation, statutory interpretation, um, rule of e justem generis. Look at the statute itself to give guidance, to keep the statute constitutional. And in the spirit of trying to do that, we believe the, the act has a five and seven year, um, uh, period, and we're not challenging that those are unreasonable. We think those could be good guides. Um, and speaking of Barron, um, regrettably, we believe that the district court misread it in, in several significant ways. Um, the first is that the court considered the, the Barron court's decision on the preponderance of the evidence standard, and that it was acceptable in the court's view, that it foreclosed inquiry into the entire decision-making process. Uh, the first is, the first issue with that is- You're not disputing though that Barron explicitly ruled that the preponderance of the evidence standard in this statutory scheme is constitutional, are you? It absolutely said that. It absolutely said that. We are, in fact, asking the court to look at that again. We understand what is required for that, but we, we, uh, at, um, accept the, the court's ruling on that issue. But the, the district court took it from there and said, since the preponderance of the evidence standard has been accepted, it forecloses, uh, the need to look at other things like the relevancy of evidence or the reliability of evidence that the board looked at. And Barron just did not look at the evidentiary issues, um, and it's not even a, a logical leap from the level of scrutiny, excuse me, uh, the burden of proof level to reliability and relevance. So that- Why is that part of your facial challenge? How is this as applied? Because this is his second go-round and, uh, Mr. White's second go-round, and some of these had been previously raised. But this, this is a facial that challenge that the, uh, the association would hope to make. Yeah. Because as to Mr. White, you started out, or in response to Judge Seney's question, saying, no, he's just, he's just, he himself is just raising as applied challenges. Well, the, the district court in, uh, first believed that, uh, Mr. White had no challenge because he was a dangerous person, and then, uh, said, even if I were to consider a second amendment challenge, uh, Barron forecloses his, uh, his claims because, and this is one of the becauses. Um, so it, it, it wasn't as applied consideration by the district court, we believe. Um, I'm sorry, did you say it wasn't as applied or it wasn't? It was. The, the, the court treated it as an as applied challenge, the district court, I should say. Okay. The, uh, the district court also read Barron to shift the burden of proving entitlement to a concealed carry license to the state. But this is, this incorrect, the, the, the, uh, the court noted, the Barron court noted as a matter of fact, quite to the contrary, that, um, the concealed carry licensing act places the burden on proving, uh, that somebody is not entitled because they are dangerous or a threat on the state. So that was just a, a, a, an erroneous statement of the law. Another point with which, uh, we take great issue is that the, the district court believed that the one, uh, um, conviction for unuseful, unlawful use of a weapon, which dated back to 1998, which we believe was the, um, uh, having a loaded firearm in a vehicle and Mr. White possessed a Floyd, but he, uh, at that time, obviously did not have a CCL, um, that the court's belief that that could indefinitely disqualify Mr. White places an undue burden on his second amendment rights, um, categorical permanent bans have only been legislatively determined, uh, both, uh, in, uh, federal law, most specifically 18 USC, nine 22 G and the various subsections there and section 25 of the concealed carry act, they specifically say who is not, uh, uh, permitted to obtain a firearm. And these are demonstrably dangerous people, people with felony convictions, people with convictions for violent misdemeanors. Mr. Bedell, what's the basis for you arguing that this is a ban forever and a categorical ban forever because of this prior conviction? I don't see anything in the denial of the license here that says he could never come back and try again. The act itself doesn't say that, but it's in the application of the act and, and the, um, what is it about the application as applied to your client that says he could never come back and apply again? The only evidence we have is the two year difference between the denial of the first application and the denial of the application in the case before us, that doesn't say anything about five years from now, 10 years from now, at least not that, that I have read in the record. No, that, that is correct, Your Honor. The act itself does not say that, but the application has in fact, um, uh, resulted in that. But you're asking us to draw an inference that just because a two year passage of time has gone by between the denial of the first and denial of the second, that he's never in the future going to be able to get a license. And I'm asking you what, what is there in the record that would enable us to draw that inference and say that that's reasonable? That the board twice looked at the same evidence, the allegation that he's a gang member and that he had a, a record of arrests and misdemeanor convictions running back 20 years. So if the board can continually look at these things and finds them evidence of dangerousness, they never go away. And uh, the district court itself in saying the one, uh, misdemeanor conviction could quote indefinitely disqualify him, close quote, we believe supports that position, that it's well within its rights and probable that the board would deny him again. You're into your rebuttal time, Mr. Bedell, would you like to reserve or continue? Uh, reserve. Thank you, Your Honor. Thank you, Mr. Bedell. Mr. Hammer, we'll go to you. Thank you, Judge Brennan. Um, good morning. May it please the court, Alex Hammer for the state police and the board. Um, Mr. White has conceded that his facial challenge to section 20G and its implementing regulations is foreclosed by principles of claim preclusion as the district court held. That leaves Mr. White at most with an as applied second amendment claim, but that claim should be rejected on several grounds. Mr. Hammer, I'm, I'm sorry to interrupt. Before we get into the substance, I want to ask you the same question that I did, Mr. Bedell. Is there anything about the case pending before the Supreme Court that should give us pause or make us wait until the Supreme Court rules before we issue a ruling in this case? We don't think that a hold is required here or inappropriate here, Judge St. Eve. I mean, as Mr. Bedell observed, the kind of only similarity between the two cases is that they both concern the issuance of public carry licenses. But the kind of question before the Supreme Court, the primary question before the Supreme Court in the Bruin case is this may issue, shall issue distinction. You know, here the question is whether the board's determination that Mr. White was not entitled to a concealed carry license on the ground that he's a danger to himself or to his constitutional. So we don't think that there is a need to hold this case for that one. Thank you. Sure. Um, so as I was just as just getting to Mr. White's as applied claim should be rejected here for substantially the same reasons as his facial claim. First, he has failed to meaningfully develop and as applied claim on the, on his, on these facts. Instead, as the district court explained and as Judge Scudder observed, he primarily asserts the same facial attacks on section 20 G and it's implementing regulations that have now been twice rejected both by this court in Baron and then by the Illinois appellate court. Those aspects of an as applied second amendment claim that White has developed in his complaint and his brief moreover are barred by claim and issue preclusion for essentially the same reasons as his facial claim is his current as applied second amendment claim does not differ in any meaningful way from the claim that he brought in 2015 in the Illinois court system. So the court should affirm the judgment below on the ground that White's as applied second amendment claim is barred by preclusion principles. What about his claim though, that the focus is on dangerousness and two years have passed between the denial of the first license and the denial of the second license with a clean record in terms of law enforcement context, that that has to count for something in terms of dangerousness. Why wouldn't that make at least that narrow as applied challenge viable and not precluded by res judicata here? I think there are a couple answers to that, Judge St. Eve. So you know, White's principle argument on the preclusion front is that he has a new And that would certainly be true if you were seeking administrative review of the board's decision in state court as he did in 2015. But it is not true of his second amendment claim, because that claim is for all practical purposes, the same second amendment claim as he brought his 2015 suit. So for instance, in 2015, he argued that the board violated his second amendment rights by considering arrests that occurred approximately 20 years before his application. He argued that the board considered his alleged gang membership. He argued that the board reportedly subjected him to a lifetime ban. He made all of the same second amendment arguments in his 2015 state court suit as he makes today. And so principles claim preclusion and issue preclusion bar him from trying to relitigate that claim in the federal court system. If the court were to sort of view that view, you know, the kind of claim you described, the kind of narrow, you know, time has passed since the 2015 denial claim is kind of giving as surviving preclusion principles. I think the problem is that he really has not developed that claim in any meaningful way. And you saw that in his argument, just in Mr. Bedell's argument just now. Most of the kind of planks on which his argument rests are simply facial attacks on the system sort of dressed up as applied challenges, such as his argument that the preponderance standard is unfair. All of those arguments have been raised before and rejected before. I think there's also a kind of practical reason, though, Judge St. Eve, why the claim you describe is not, you know, sort of an appropriate one for the court to consider. And that's because it kind of misconceives of the court's role. It envisions this court and federal courts performing the same kind of review that state courts would perform in reviewing an administrative decision. It's as if litigants can sort of simply choose their forum as between state court review of an administrative decision and federal court review of that same decision. Here, Illinois has set up a system in which an applicant like Mr. White can apply for a concealed carry license, obtain a reasoned decision from an administrative agency, and then, if necessary, challenge that decision in state court. That's what Mr. White did in 2015. And when he did that, he received a full panel plea of procedural protections. He was given access, for instance, to the board's full administrative record, hundreds of pages of documents that explained the basis for the board's decision. So Mr. Hammer, how do we draw that line? And I agree, it seems odd to me that you could directly appeal the board's decision from a state agency to federal court and not go through the Illinois state courts, given the procedures that are there. On the other hand, this has been brought as a 1983 lawsuit. There's no requirement of exhausting any administrative remedies before coming into federal court. It's an as-applied constitutional challenge. So how do we differentiate? What's the line there? I think that's a very fair and difficult question, Judge St. Eve. I think in this case, it is made somewhat easier by the fact that Mr. White did bring this and a substantively identical claim two years before that rested on all of the same premises that he now asserts in his federal 1983 lawsuit. In fact, he brought his second application before the board, before his state court suit had even kind of fully been resolved. His PLA was still pending before the Illinois Supreme Court. And both in his application and then in his complaint and his appellate briefs, as I said, he has not really provided any new factual or legal kind of argumentation about why the circumstance, the two-year difference matters. You know, it's even down to look at the kind of affidavit that he submitted here. It's the same affidavit, essentially, that he submitted in 2015 when he applied for, in 2014 when he applied for a concealed carry license and then challenged the board's decision in the state court. So, Mr. Hemmer, what I think you're saying, and you can correct me if I'm wrong, is in light of all of those circumstances and the federalism concerns that you raise, that at the very least, this court should conduct the narrowest possible form of judicial review over this claim and allow some of the extremely difficult questions on line drawing and giving  So, maybe this is, you know, one of your more important points, allow all of that to continue to be developed as we know it is being developed in the Illinois state courts in cases like Jankovic and Perez and what have you. Is that a fair summary of your position? That's absolutely right, Judge Scudder. I mean, you know, our kind of first-line position is that the court doesn't need to reach any of it because the entire claim is precluded, but I think that's right. If the court were to understand there to be a kind of narrow sliver of a second as applied Second Amendment claim here that is kind of new and that is not dispensed with by the state court decision in his 2015 proceedings, then I think that's exactly right. I think the court should apply the kind of, you know, most deferential form of scrutiny here because, you know, among other things, as you say, the state agency and the state body of law on this, and it would be wise to let that, you know, that process continue. And, you know, were the court to apply a kind of more searching form of means-ends review here that would have a terrible incentive on, it would create a terrible incentive for litigants who lost at the board because they would understand that if they were to proceed through the state court system that Illinois, you know, has made available to them, they would face a form of kind of deferential review, but if they were to proceed to federal court and circumvent that system, they would be able to, you know, sort of have their claim reviewed in a way that puts the kind of thumb on the scale for the applicants. And so for that reason, I think that's exactly right. If the court is to reach the merits here of any kind of aspect of Mr. White's claims, it should review the board's decision deferentially. That's consistent. Sorry. That's consistent. Can I ask you a follow-up question? Mr. Bedell raises a couple of, I think, very fair points that I'd like to hear you respond to, and it's this. Is there, what is someone to do? I'm not talking about in federal court with 1983 now, okay? What is available to someone like Mr. White who believes that they are erroneously within the gang database and stuck there? So sure, he's invoked state FOIA. He got the piece of paper, which is, as Mr. Bedell said, of no use to him whatsoever. It just told him what he already knows. What is he, what can he do under Illinois law to have that examined? I take the court's question and its concern. You know, I would emphasize that in this case, the board heard, the board considered a wide range of evidence before issuing its decision. Fair enough. What could he do tomorrow? What could he do tomorrow? And I don't, I don't, as I stand here, have an answer to that question, Judge Scudder, about the procedure that someone who believes that he is erroneously in the gang database can avail himself of in order to seek his removal from that database, but if the court would find it useful, I would be happy to submit a post-target. Doesn't that concern you? Mr. Bedell's point, I think, he can correct me if I'm wrong, but his point is that the Second Amendment may not allow one to just be stuck in the past like that. That whether it's the passage of time or when it comes to the integrity of information in databases, right, at some point, the protections of the Second Amendment, and it may be the procedural ambit around the substantive right, is going to kick in, and he has no idea what's not Mr. Bedell, his client, because he's getting useless correspondence that does not put him in a position to meaningfully challenge the denial of his application for the permit. And so, you can say, maybe it's a procedural due process issue, maybe it's the, you know, the procedural aspect that accompanies the substance of the Second Amendment, but I do think that the state would do well to answer that, you know, for people that are in that position that believe, I don't know how my name is in the gang database, but it's there, it's stuck, and no one will tell me. I take that point, Judge Scudder, and I think it's a fair one. You know, and as to the gang database in particular, you know, I think it's a very reasonable point. As to Mr. White and the kind of board's review of his application, though, you know, I would observe that the system of administrative review that Illinois has put into place allows Mr. White to see the entirety of the evidence that was before the board, which in this case consisted not merely of the board's, of the objection that he was a member of a gang, but a lengthy arrest record. And it allows him to challenge the board's determination in state court on the basis of that administrative record, which he did in 2015. And if the board, if an applicant like Mr. White can convince the state court system that the board's decision was erroneous, for instance, that it relied too heavily on an the state will, the state court system is capable of overturning the board's decision. I would add, too, that the board is not a rubber stamp. The board considers anywhere between kind of 500 and 1,000 cases a month in which there are objections lodged to concealed carry license applications by law enforcement agencies. It sustains those objections. That is, it denies the application in under 20% of those cases. Now, there are various kind of, you know, data intricacies there, but this is not a system that is designed to, you know, reject and reject and reject out of hand. To the contrary, the board carefully reviews every case and every objection. And in the mine run of cases, it overrules the objection and it grants the TCL. So, you know, I don't think that the board, that the court should take from Mr. White's, you know, sort of concern about the gang database, the sense that this is a kind of, you know, giant machine that only produces denials. In fact, the board is carefully and thoroughly considering applications and doing its best to ensure that only those people who are dangerous to themselves or to the public are not allowed access to concealed carry permits. Mr. Hammer, put to the side for the moment the claim preclusion arguments and focus in on the issue preclusion arguments. Do we take from your presentation this morning that you see a distinction between issue preclusion in the procedural due process realm and issue preclusion in the Second Amendment realm? I don't think there is a relevant distinction between the Second Amendment and due process arguments from a, from an issue preclusion standpoint. Insofar as the key planks of his, of Mr. White's due process argument are his argument that he should have had a hearing and his argument that, his preponderance of the evidence argument and his argument that there should have been a kind of more fulsome decision. All of those arguments were litigated in the 2015 state court proceedings and so issue preclusion principles would apply even if one conceived of the current claim as a new claim that would survive claim preclusion principles. I think the... So even if we're obviously applying the same law of issue preclusion to both claims, do we take from your presentation this morning that Mr. White may have a stronger Second Amendment claim that might have a better chance at surviving issue preclusion than a due process claim based on the record? I see the, I understand the question, Judge Brennan. Thanks. I think it's fair to say that if one thought that Mr. White sort of got past claim preclusion, that would have to be because he has a new Second Amendment claim arising out of the kind of passage of time. And so in that sense, yes, I think he would have a, you know, there is a better argument that some aspect of his Second Amendment claim is not issue precluded, whereas all of his due process claim is issue precluded. Is that the distinction you were getting at? It is. Thank you. Before we run out of time, I'd like to hear from you with regard to the dismissal with prejudice here, specifically with regard to the State Rifle Association's claim. They make an argument that it would not be futile for them to amend their complaint. What's your position with regard to that, including a possible remand? So I want to distinguish between two things. One is the lower court's use of the phrase with prejudice that, you know, as this court explained, and I think the MAO case, you know, that vocation is, was an error insofar as even a deny, even a dismissal on standing grounds with denial of leave to amend is not a dismissal with prejudice because the entity in this case, the Rifle Association can always bring a new claim, i.e. a dismissal on standing grounds is always without prejudice to the merits of the claims. As to the denial of leave to amend, though, we think the question for the court is whether the district court abused its discretion in denying leave to amend, and the answer to that question is that it did not. As this court has held in several cases, a district court is not required to sort of offer leave to amend where a party does not request it, and here the Rifle Association never requested leave to amend. And do you agree, Mr. Hammer, if the district court did not abuse its discretion here, that in light of the issue of with prejudice and without prejudice, that if the Rifle Association wanted to file a new lawsuit that was identical, that they're free to do so, that there's no claim preclusion, no res judicata? You agree with that? That's right. I mean, you know, our position would still be that there would probably be aspects of that claim that would be barred by Barron, but there would be no res judicata, you know, preclusion issue with the Rifle Association just filing a new lawsuit, which is why, you know, affirming the district court's denial of leave to amend or the, you know, the dismissal on standing grounds here is harmless as to the Rifle Association because they can simply, if it wants to bring a new claim, it can bring a new claim. I have a follow-up question to the line of questions Judge Brennan was previously asking you about in differentiating between the Second Amendment claim and the due process claim and whether or not claim preclusion or issue of preclusion would apply there. I think I'm hearing you correctly on, and if you correct me if I'm wrong, on the due process claim, it's your argument that issue preclusion or claim preclusion would apply there because all of Mr. White's due process claims are essentially facial challenges that he's attempting to address as and as applied? I think that's right, yes. I don't have any other points for the Court. I'd be happy to take any additional questions that any members of the panel have. No further questions. Thank you, Mr. Hammer, for your presentation. Mr. Bedell, we'll move back to you for rebuttal. Thank you, Your Honor. Judge Scudder, to your question about whether or not the FOIA results that there was really substance or substantiation to Mr. White's inclusion in the gang database, looking at the record, the separate appendix at page 49, it's a response of the Department of the City of Chicago to the FOIA request, and it is dated June 15th of 2015. That leads me to believe very strongly that, yes, it was raised in connection with his application. With regard to the issue of race judicata, as we indicated in our reply brief, the State's argument on this issue could not be a greater argument for our position that this is a permanent ban, that all the issues that Mr. White could have raised relating to whether or not he is challenged have been exhausted and that they will never change. He has had his day in court. They don't change. Going from that then to the issue of as-applied challenges, here that is, in fact, what Mr. White is making with specific regard to his second application. Now, the issue, Judge St. Eve, when you've asked about the length of time, we asked the same thing. How long? No, there's nothing that would prevent Mr. White right now to go on the ISP portal and submit another application. There's nothing in the statute, nothing in any decision that says if a number of years passes, we'll consider – without any problems with law enforcement, we'll consider you no longer dangerous. The only thing the State had to offer in its briefing of the motion below was that if he stays out of trouble long enough, his application will be stronger. That's no constitutional standard. That tells nobody nothing. It doesn't give Mr. White any protection under the Second or Fourteenth Amendment. The – to clarify one or two other issues, Mr. White is not making an as-applied challenge to the preponderance of the evidence statute. We are truly focusing on the evidentiary issues of the Board considering, with regard to the 27th application, the irrelevant and unreliable evidence, the fact that he never got a hearing. He requested it again, and this was discretionary with the court. We believe it was a – again, it was a burden on his rights and a due process violation when he was not granted a hearing, especially with the issues of the gang database. He couldn't look anybody in the eye and explain what was going on. And finally – and this relates to two points – both the burden and his ability, as I believe, Justice Scudder, you were discussing with counsel, the administrative aspects and how the administrative procedures give an applicant protection. In White, in Perez, in Jankovic or Jankovic, in none of those cases did the review board do anything other than parrot the language of the statute. We find, based on the objection, that the applicant is a danger or poses a threat directly from the statute, nothing indicating what was the basis of that finding. So from a standpoint of being able to review it, there's nothing to review. From a standpoint of having an understanding for future – has my time expired? MR PALLADINO You may briefly finish. Thank you. MR ABRAMS From the standpoint of trying to review an administrative decision, there is nothing to review. And on the related point to that, reviews under the Administrative Review Act in Illinois are for either against the manifest, whether the evidence standard, or clearly erroneous. My experience is that it never happens. That decision is – the factual determinations are set in stone. MR PALLADINO Thank you, Mr. Burdell. MR ABRAMS Thank you, Your Honor. MR PALLADINO The case will be taken under revisement. Thank you, Mr. Burdell.